IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MO-KAN IRON WORKERS PENSION FUND, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 12-cv-2490-JAR-DJW |
| | ) | |
| TRAVELERS CASUALTY AND | ) | |
| SURETY COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

On July 31, 2012, Plaintiffs Mo-Kan Iron Workers Pension Fund, a Trust Fund, Mo-Kan Iron Workers Welfare Fund, a Trust Fund,  Mo-Kan Iron Workers Apprenticeship, Training and Education Fund, a Trust Fund (the "Plaintiff Funds"), and Richard Christopherson and Donald E. Greenwell, III, duly appointed and acting Trustees of Plaintiff Funds, filed a complaint against Defendants Travelers Casualty and Surety Company, Fidelity and Deposit Company of Maryland, Liberty Mutual Insurance Company, Federal Insurance Company, and Zurich American Insurance Company, alleging that Defendants failed to pay their insured companies' liabilities for unpaid employee benefit plan contributions.  Defendants provided for two companies,  Balfour-Walton, A Joint Venture ("Balfour-Walton") and W&W Steel, LLC ("W&W Steel"), which were working on the Irwin Army Community Hospital replacement project ("Project") at Fort Riley, Kansas.  Plaintiffs maintain that subcontractors on the project failed to pay benefits to Plaintiff Funds, as required by their contracts, and so make a claim on the bonds provided by Defendants.

On August 24, 2012, Defendants filed a Motion to Dismiss (Doc. 20), currently before

the Court, arguing that Plaintiffs' Complaint failed to state a claim.  The motion is fully briefed and the Court is prepared to rule.  As described more fully below, the Court grants Defendants' motion to dismiss.

## I. Legal Standard

To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[1]  "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[2]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[3]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[4]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[5]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but]

---

[1]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[2]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[3]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4]*Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[5]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[6]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[7]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[8]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]

## II. Factual Allegations

The following facts are alleged in Plaintiffs' Complaint and construed in the light most favorable to Plaintiff.  Plaintiffs allege that the United States Department of the Army, specifically the Army Corps of Engineers, Kansas City District, entered into a prime construction contract with Balfour-Walton for work on the Project.  Balfour-Walton subsequently entered into a contract with W&W Steel to perform steel erection work on the Project.  W&W Steel entered into a subcontract with Materials Management, Inc. ("MMI") to perform steel erection work on the Project.  MMI then subcontracted the steel erection work on the Project to BSC Steel, Inc. ("BSC").  BSC is a signatory to a collective bargaining agreement requiring employee benefit plan contributions to Plaintiff Funds for work on the Project.  Iron worker employees of BSC performed work on the project, which required employee benefit plan

---

[6]*Id.*

[7]*Id.* at 679.

[8]*Id.*

[9]*Id.* at 678.

contributions to be made on their behalf to Plaintiff Funds as required under the terms of the collective bargaining agreement.

The Davis-Bacon Act, 40 U.S.C. § 3141, *et seq.*, requires contractors on federal construction projects, such as the Project, to pay prevailing wages, including benefits, to individuals providing labor on such projects.  The government contract with Balfour-Walton, and all of the contracts between the various subcontractors on this project, incorporated the requirement that individuals providing labor on the project be paid Davis-Bacon Act wages and benefits.  Plaintiffs allege BSC, in violation of its contract, failed to pay benefits for the iron worker employees in accordance with the Davis-Bacon Act and the controlling wage determination issued by the Department of Labor, by failing to make required contributions to Plaintiff Funds on behalf of the workers.  Plaintiffs maintain that they are owed $797,655.80.

### III. Discussion

In Count 1, Plaintiffs allege that, as required by 40 U.S.C. § 3131 (the "Miller Act"), Balfour-Walton obtained a payment bond (the "Balfour-Walton Bond") from Defendants Travelers Casualty and Surety Company, Fidelity and Deposit Company of Maryland, Liberty Mutual Insurance Company, Federal Insurance Company and Zurich American Insurance Company.  Under the Miller Act, a prime contractor on a federal construction project involving over $2,000 must post a payment bond to protect those who have a direct contractual relationship with either the prime contractor or a subcontractor, a term defined by the Miller Act.  Plaintiffs allege that, under the terms of the Balfour-Walton Bond, these five defendants are liable to Plaintiffs for the unpaid employee benefit plan contributions.

In Count 2, Plaintiffs allege that W&W Steel also obtained from Liberty Mutual

4

Insurance Company a payment bond for the benefit of subcontractors and suppliers, ("W&W Steel Bond"). Plaintiffs' second claim in the original complaint is quite vague as to the basis for the claim, but Plaintiffs' Response to the Motion to Dismiss provides additional detail as to the nature of the claims,[10] and Plaintiffs' Complaint as further elaborated in the Response is not so vague as to prevent the Court from addressing it. Plaintiffs allege that, under the terms of the W&W Steel Bond, Defendant Liberty Mutual Insurance Company is liable to Plaintiffs for the unpaid employee benefit plan contributions due under the prevailing wage determination.

Defendants make three arguments in favor of dismissing the lawsuit against them. First, Defendants argue that Plaintiffs are attempting to create a private right of action under the Davis-Bacon Act, and that the Act creates no such right of action. Second, Defendants argue that Plaintiffs are too far removed to state a plausible Millar Act claim, because Plaintiffs lack a direct contractual relationship with the prime contractor or the first subcontractor. Third and finally, Defendants argue that BSC, the iron workers, and other funds allegedly due contributions from BSC are necessary and indispensable parties, such that they should be joined or the suit should not be allowed to proceed.

Plaintiffs do not dispute Defendants' first argument, but clarify that they are not asserting any claims based solely on the Davis-Bacon Act. Rather, they assert an action under the Miller Act to enforce the minimum wage requirements of the Davis-Bacon Act as incorporated in the prime contract and the subcontracts at issue in this case.[11] As Plaintiffs clearly state in their response, they "are making two distinct Miller Act bond claims against Defendants: 1) against

---

[10]Specifically, Plaintiffs clarify that their second claim, like the first claim, is a Miller Act claim. Doc. 22 at 7.

[11]Id. at 4–5.

the payment bond for which Balfour-Walton is the obligee (Count 1), and 2) against the payment bond for which W&W Steel is the obligee (Count 2)."[12]  In light of this clarification, Defendants added an additional argument, that the Miller Act bond claim in Count 2 could not be asserted against W&W Steel because only prime contractors, not subcontractors, post a Miller Act bond.

    **1.  Plaintiffs are too far removed to state a Millar Act claim because they lack a direct contractual relationship with the prime contractor or the first subcontractor.**

    Accepting Plaintiffs' facts as true, Balfour-Walton is the prime contractor on this project, W&W Steel is a subcontractor, MMI is a sub-subcontractor, and BSC is a sub-sub-subcontractor. Plaintiffs suggest in their response that MMI may be a sham subcontractor, and argue for discovery on that question, but even if MMI is removed from the list, BSC is at best a sub-subcontractor.

    The relationship between the subcontractors matters because the Supreme Court has clearly addressed the question of who may recover under a Miller Act claim.  In *J.W. Bateson Company, Inc. v. United States ex rel. Trustees of the Nat'l Automatic Sprinkler Industry Pension Fund*,[13] a union and its trustees sought to recover under the prime contractor's Miller Act bond for fringe benefit funds and union dues which a sub-subcontractor had withheld from employees but had not turned over to the union.  Noting that the Miller Act, on its face, limited protection under Miller Act bonds to "those who have a direct contractual relationship with either the prime contractor or a 'subcontractor,'"[14] the Court addressed "whether the term

---

    [12]*Id.*, at 7.

    [13]434 U.S. 586 (1978).

    [14]*Id.* at 587.

'subcontractor,' as used in the Act, encompasses a firm that is technically a 'sub-subcontractor.'" After reviewing the Act's language, the legislative history, and other court decisions addressing the question, the Supreme Court concluded that "the word 'subcontractor' must be limited in meaning to one who contracts with a prime contractor."[15]  Under this reading, the Court ruled, neither the union nor the trustees nor even the employees themselves could assert a claim under the Miller Act; the Act's protection extended to the sub-subcontractor, but no further.

The *Bateson* rule bars the claims in this case.  Construing the facts in the best light for Plaintiffs, BSC is at best a sub-subcontractor, and, as in *Bateson*, a sub-subcontractor's employees fall outside the protection of the Miller Act.  Plaintiffs do not seriously contest this argument—they point to no cases suggesting that they are not too far removed to state a Miller Act claim.  Thus *Bateson* bars Plaintiffs' Miller Act claims in this case.

**2. Plaintiffs cannot assert a Miller Act bond claim against a non-Miller Act bond.**

Even if the Miller Act did not bar Plaintiffs' claims, their second claim would still fail. Plaintiffs base their claim against W&W Steel on the Miller Act, but the Miller Act requires that only prime contractors, not subcontractors, post a Miller Act bond.[16]  Moreover, the structure of the Act, which allows a person having a direct contractual relationship with a subcontractor but no relationship with the contractor to still recover against the contractor, envisions Miller Act bonds posted only by the prime contractor.[17]  Further, the Act itself notes that it is "the

---

[15]*Id.* at 594.

[16]40 U.S.C. § 3131.

[17]*Id.* at § 3133 (emphasis added).

*contractor* furnishing the payment bond."[18]  Finally, the structure and language of the Act notwithstanding, Plaintiffs failed to allege facts in their complaint supporting their argument that the W&W Steel Bond is a Miller Act bond.  Thus Plaintiffs cannot make a claim against the subcontractor's Miller Act bond; the subcontractor has no such bond.

Because the Court agrees with Defendants' other arguments and so is dismissing this complaint for failing to state a claim, the Court does not reach Defendants' argument that BSC, the Iron Workers, and other funds allegedly due contributions from BSC are necessary and indispensable parties, such that they should be joined or the suit should not be allowed to proceed.

**IV. Ruling**

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 20) is GRANTED.

IT IS SO ORDERED.

Dated: <u>November 27, 2012</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[18]*Id.*